UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BEVERLY HILLS RACQUET AND
HEALTH CLUB, LTD.,

    Plaintiff,

v.

THE CINCINNATI CASUALTY
INSURANCE COMPANY,

    Defendant.
_____/

Case No. 19-12388

Stephanie Dawkins Davis
United States District Judge

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 12) AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 13)**

**I.    INTRODUCTION**

Plaintiff Beverly Hills Racquet and Health Club, Ltd. ("Beverly Hills") is a health club located in Beverly Hills, Michigan. Beverly Hills was insured at all relevant times under a policy issued by Defendant, The Cincinnati Casualty Insurance Company ("Cincinnati"). This litigation arises from a fire that occurred at Beverly Hills and the parties' subsequent dispute over insurance coverage. The parties have reached agreements on the building and business personal property losses, and those claims have been paid and concluded. However, the parties disagree as to the loss of business income coverage under the policy. Beverly Hills

1

argues that this matter must be sent to appraisal under Mich. Comp. Laws § 500.2833(1)(m) because the parties disagree as to the amount owed for loss of business income under the policy. (ECF No. 12). Cincinnati argues that the plaintiff's complaint should be dismissed with prejudice because this matter concerns a coverage issue. (ECF No. 13). For the reasons set forth below, the court holds that this matter does not concern a coverage issue and, therefore, is ripe for appraisal under Mich. Comp. Laws § 500.2833(1)(m). Accordingly, the court **GRANTS** the plaintiff's motion for summary judgment (ECF No. 12) and **DENIES** the defendant's motion for summary judgment (ECF No. 13).

## II.   FACTUAL BACKGROUND

Beverly Hills is a racquet and health club located in Beverly Hills, Michigan. (ECF No. 14-2, PageID.330). Cincinnati issued Policy No. ETD 0357230 to Beverly Hills, which covered loss caused by fire damage (the "Policy"). (ECF No. 13, PageID.146-292). On or about May 12, 2017, a fire broke out in Beverly Hills' business premises. (ECF No. 14-2, PageID.331); (*see also* ECF No. 13, PageID.294). Beverly Hills subsequently filed a claim for damage to business personal property, repairs to the building, and loss of business income. (ECF No. 13, PageID.294-299). The parties reached agreements on the building and business personal property damage claims, but not on the club's business income losses. (ECF No. 14-2, PageID.331).

The Policy contains a provision pertaining to business income loss. More particularly, it provides the following:

> b. Business Income and Extra Expense
>
> (1) Business Income
>
> We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss. With respect to "loss" to personal property in the open or personal property in a vehicle, the "premises" include the area within 1000 feet of the site at which the "premises" are located.

(ECF No. 13, PageID.184-185). The Policy defines "Business Income," "loss," "period of restoration," "operations," and "suspension" as follows:

> 2. "Business Income" means the:
>
>    a. Net Income (net profit or loss before income taxes) that would have been earned or incurred; and
>
>    b. Continuing normal operating expenses incurred, including payroll.
>
> 9. "Loss" means accidental loss or damage.
>
> 11. "Operations" means:
>
>    a. Your business activities occurring at the "premises"; and
>
>    b. The tenantability of the "premises", if coverage for "Business Income including "Rental Value" or "Rental Value" applies.
>
> 12. "Period of Restoration" means the period of time that:

    a. Begins at the time of direct physical "loss".

    b. Ends on the earlier of:

        (1) The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

        (2) The date when business is resumed at a new permanent location.

    c. "Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

        (1) Regulates the construction, use or repair, or requires the tearing down of any property; or

        (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

    d. The expiration date of the policy will not cut short the "period of restoration".

20. "Suspension" means:

    a. The slowdown or cessation of your business activities; and

    b. That a part or all of the "premises" is rendered untenantable.

(ECF No. 13, PageID.201-203). In calculating business income loss, the Policy states:

> j. Loss Determination - Business Income and Extra Expense
>
> (1) The amount of "Business Income" and "Rental Value" "loss" will be determined based on:

(a) The Net Income of the business before the direct physical "loss" occurred;

(b) The likely Net Income of the business if no physical "loss" had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

(c) The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical "loss"; and

(d) Other relevant sources of information, including;

    1) Your financial records and accounting procedures;

    2) Bills, invoices and other vouchers; and

    3) Deeds, liens or contracts

(ECF No. 13, PageID.197). The Policy also provided coverage for "Extended Business Income," set forth as follows:

(7) Extended Business Income

(a) For "Business Income" Other Than "Rental Value", if the necessary "suspension" of your "operations" produces a "Business Income" or "Extra Expense" "loss" payable under this Coverage Part, we will pay for the actual loss of "Business Income" you sustain and "Extra Expense" you incur during the period that:

    1) Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

    2) Ends on the earlier of:

> a) The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical "loss" had occurred; or
>
> b) 60 consecutive days after the date determined in (a)(1) above.
>
> However, Extended Business Income does not apply to loss of "Business Income" sustained or "Extra Expense" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located. Loss of "Business Income" must be caused by direct physical "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

(ECF No. 13, PageID.186).

Beverly Hills resumed its operations in December 2017. (ECF No. 14-2, PageID.331). The parties agree that the Extended Business Income period expired February 2018 pursuant to the Policy's terms.

### III. LEGAL STANDARDS

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The standard for determining whether summary judgment is

appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Additionally, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

In assessing whether there is a genuine dispute about a material fact, the court must determine if the evidence in the case "is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id*. at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment, the court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252-53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at 327.

**IV.    ANALYSIS**

"In diversity cases such as this, [the court] appl[ies] state law in accordance with the controlling decisions of the state supreme court." *Allstate Ins. Co. v. Thrifty Rent–A–Car Sys. Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). If the Michigan Supreme Court has yet to address the issue a particular case presents, this court

8

anticipates how Michigan's highest court would rule by looking at all available data. *Id.*; *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005). Unless it is shown that the Michigan Supreme Court would decide differently, this court views Michigan's intermediate court's decisions as persuasive. *Allstate Ins. Co.*, 249 F.3d at 454.

In Michigan, "a policy of insurance is much the same as any other contract. It is a matter of agreement by the parties. The courts will determine what that agreement was and enforce it accordingly." *Eghotz v. Creech*, 365 Mich. 527, 530 (1962). Courts interpret the policy coverage of fire insurance agreements, but disagreements regarding the actual cash value or amount of loss may be determined by appraisers. *Auto–Owners Ins. Co. v. Kwaiser*, 190 Mich. App. 482, 487 (1991); *UrbCamCom/WSU I, LLC v. Lexington Ins. Co.*, 2014 WL 1652201, at *3 (E.D. Mich. Apr. 23, 2014) ("When the amount of loss is in dispute, the appraisal process is preferred over judicial determination because it is 'a simple and inexpensive method for the prompt adjustment and settlement of claims.' ") (quoting *Auto-Owners Ins. Co.*, 190 Mich. App. at 486)).

Michigan law provides:

> (1) Each fire insurance policy issued or delivered in this state shall contain the following provisions...
>
> (m) That if the insured and insurer fail to agree on the actual cash value or amount of the loss, either party may make a written demand that the amount of the loss or the

9

> actual cash value be set by appraisal. If either makes a written demand for appraisal, each party shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days after receipt of the written demand. The 2 appraisers shall then select a competent, impartial umpire ... The appraisers shall then set the amount of the loss and actual cash value as to each item. If the appraisers submit a written report of an agreement to the insurer, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any 2 of these 3 shall set the amount of the loss...

Mich. Comp. Laws § 500.2833(1)(m). Here, the Policy language accords with Mich. Comp. Laws § 500.2833 in that it requires the parties to engage an appraiser when there is a dispute regarding an amount of loss. (ECF No. 13, PageID.195).

As explained above, Beverly Hills premises its suit upon Mich. Comp. Laws § 500.2833(1)(m). Cincinnati challenges Beverly Hill's invocation of the appraisal provision. More particularly, Cincinnati argues that the parties' dispute concerns a coverage issue requiring judicial determination because Beverly Hills seeks to recover business income losses in the form of lost club memberships spanning the next eight years "despite the unambiguous language clearly limiting the extent of this coverage to 60 days after the premises is repaired and [Beverly Hills] resumes its business." (ECF No. 13, PageID.135, 141). In response, Beverly Hills *agrees* that it cannot recover the value of club memberships that were lost beyond the 60-day time frame after repairs were completed; that is, after February 2018. (ECF

No. 14, PageID.321). To its response, Beverly Hills attaches an affidavit of Steven Satovsky, Beverly Hills' President, who attests that Beverly Hills presented records to Cincinnati establishing that the "average length" of club membership is over eight years but that the claim for loss of business income "was and has been limited to the value of memberships that were lost only through February 2018." (ECF No. 14-2, PageID.331). In reply, Cincinnati clarifies that it is arguing that there is no coverage to recover the full, alleged 8-year value of the memberships because coverage is limited to the "actual loss" of business income that Beverly Hills incurred through the 60-day period, which Beverly Hills admits ended in February 2018. (ECF No. 17, PageID.360).

      The court finds that there is no coverage issue in this case. The court begins with the legal principles announced in *Kwaiser*, a Michigan Court of Appeals decision standing for the "well-accepted" proposition that "'the issue of coverage is for the court, not the appraisers.'" *Smith v. v. State Farm Fire and Cas. Co.*, 737 F. Supp. 2d 702, 711 (E.D. Mich. 2010) (quoting *Kwaiser*, 190 Mich. App. at 487). In *Kwaiser*, the roof over the living room of Ms. Kwaiser's mobile home collapsed because of heavy rain. *Kwaiser*, 190 Mich. App. at 483. An engineer hired by the insurance company discovered that the structure of the entire roof was rotted because of long-term trapped moisture and that any repair involved replacement of the entire roof. *Id.* The insurance company demanded an appraisal under the

policy. *Id.* Following the appraisal, the insurance company brought a declaratory judgment action, asking the court to order the matter to be resubmitted for appraisal after a clarification of the insurer's liability. *Id.* More specifically, the insurance company argued that the appraisers should have considered the policy exclusions for neglect and wear and tear in reaching their conclusions. *Id.* at 483 n.1, 485. The court concluded that the question of whether the claimed damage falls within a policy exclusion is a coverage dispute to be resolved by the court and remanded for a determination of the policy's coverage and the insurer's liability. *Id.* at 487. Alternatively stated, the parties in *Kwaiser* did not contest the scope or extent of the damage; rather they raised the issue of whether that damage was excluded under the policy, a coverage issue. *See CIGNA Ins. Co. v. Didimoi Property Holdings, N.V.*, 110 F. Supp. 2d 259, 267 (D. Del. 2000) (discussing the holding of *Kwaiser*). The Michigan Court of Appeals held that "[w]here the parties cannot agree on coverage, a court is to determine coverage in a declaratory action before an appraisal of the damage to the property." *Kwaiser*, 190 Mich. App. at 487.

This court's prior decision in *Smith v. State Farm & Cas. Co.*, 737 F. Supp. 2d 702 (E.D. Mich. 2010) is also instructive. *Smith*, which cited *Kwaiser*, held that where there is no question as to what categories of loss are covered under the policy and the insurance company concedes coverage for the loss, the matter is ripe

for appraisal. *Id.* at 710-11. In *Smith*, the plaintiffs suffered smoke damage in their home caused by a fire. *Id.* at 705. The insurance company admitted liability and began making payments to the homeowners for alternative living expenses. *Id.* The parties disagreed on the amount of the loss, including the amount owing for alternative living expenses, and submitted the matter for an appraisal. *Id.* As part of that process, plaintiffs' expert prepared an air quality report finding that some damage to the home was caused by "contaminants." *Id.* Based on that report, the insurance company claimed that some of the losses were excluded under the policy and, therefore, were the subject of a coverage dispute for the court. *Id.* at 706. The court disagreed, granted the homeowners' motion for preliminary injunction, and ordered the insurance company to return to the appraisal process. *Id.* at 715. The court explained as follows:

> There is no question as to the legal definition of what is covered under the policy, i.e. damage caused by the fire/smoke is covered and damage caused by the contaminants (or other sources) is not covered. The parties agree on this much. Where the insurer has already conceded coverage for the loss, as State Farm has here, deciding what damages fall into which of the two defined categories seems appropriately addressed by the appraisers, with the help of the air quality experts if the appraisers so choose.

*Id.* at 710-11.

Here, the parties do not dispute that the Policy includes protection from fire damage. Indeed, Cincinnati has already made payments to Beverly Hills for

13

building and business personal property loss resulting from the fire. (ECF No. 14-2, PageID.331). Nor do the parties dispute that club memberships lost from May 2017 through February 2018 are covered under the Policy, whereas those lost after February 2018 are not covered. Therefore, despite Cincinnati's arguments to the contrary, "[t]here is no question as to the legal definition of what is covered under the policy" and "the insurer has already conceded coverage for the loss." *Smith*, 737 F. Supp. 2d at 710-11. Accordingly, there is no coverage issue for this court to decide. Rather, the parties' disagreement lies in the value of the lost club memberships. Beverly Hills appears to take the position that the memberships lost from May 2017 to February 2018 have an 8-year value (the average length of a club membership). (*See* ECF No. 14, PageID.320). Cincinnati, however, believes that these memberships have a lesser value.[1] (*See* ECF No. 13, PageID.135). In short, the parties' disagreement concerns the value of the lost club memberships, a scope-of-loss issue. As such, this is the type of dispute that is appropriate for an appraisal under Mich. Comp. Laws § 500.2833(1)(m).

In arguing that this matter concerns a coverage issue, Cincinnati points to the unpublished decision in *Midland Academy of Advanced and Creative Studies v.*

---

[1] At oral argument, Cincinnati clarified that its position is that reimbursement under the policy should be limited to membership dues owing up to February 2018. So, for example, if a patron would have purchased a membership in January 2018, Cincinnati would have reimbursed Beverly Hills for two months (i.e., January and February 2018) of lost dues.

*Hamilton Mutual Insurance Company*, 2018 WL 6505368 (E.D. Mich. Dec. 11, 2018). As Beverly Hills points out (ECF No. 14, PageID.323), *Midland Academy* is distinguishable from the instant case. In *Midland Academy*, the plaintiff charter school filed an insurance claim following a car accident that damaged the school building in November 2015. 2018 WL 6505368, at *1. At issue, among other things, was whether the defendant insurance company was liable for business income loss resulting from low enrollment for the following school year of 2016-2017. *Id.* at *3. This court held that the school could not recover damages for any reduction in enrollment that occurred in the 2016-2017 school year because the plaintiff failed to provide sufficient evidence that the alleged decline in enrollment occurred within the period provided in the applicable extended business income provision of the insurance policy. *Id.* at *8-9.

In contrast, in the instant case, Cincinnati does not argue that Beverly Hills has failed to provide sufficient evidence that the club memberships in question were lost before February 2018, the expiration of the extended business income period. In fact, Cincinnati expressly states that it "is not arguing that its denial is based on Plaintiff claiming business income for ***memberships lost <u>after</u> February 2018***." (ECF No. 17, PageID.360) (emphasis in original). Rather, as stated above, the parties disagree as to the value of the memberships lost between May 2017 and February 2018. Because Cincinnati has acknowledged that the club memberships

15

in question fall within the extended business income period, *Midland Academy* presents an imperfect comparison. The value of the memberships lost through February 2018 is ripe for appraisal and does not present a coverage issue for the court.

## V. CONCLUSION

For the reasons set forth above, the court **GRANTS** the plaintiff's motion for summary judgment (ECF No. 12) and **DENIES** the defendant's motion for summary judgment (ECF No. 13). Accordingly, the plaintiff's action for entry of a judgment compelling the defendant to submit to binding appraisal under Mich. Comp. Laws § 500.2833(1)(m) is **GRANTED**.

**IT IS SO ORDERED**.

Dated: August 7, 2020 /s/ Stephanie Dawkins Davis
Stephanie Dawkins Davis
United States District Judge